UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SAMANTHA ARNOLD                                                              PLAINTIFF

v.                                    No. 3:17-CV-00189-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner
of Social Security Administration                                            DEFENDANT

## ORDER REMANDING TO THE COMMISSIONER

Samantha Arnold ("Arnold") applied for social security disability benefits with an alleged disability onset date of November 23, 1992. (R. at 84). The administrative law judge ("ALJ") denied her application after a hearing. (R. at 28). The Appeals Council denied Arnold's request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Arnold has requested judicial review.[1]

For the reasons stated below, this Court reverses and remands the Commissioner's decision.

I.      **The Commissioner's Decision**

The ALJ held that Arnold had the severe impairments of borderline intellectual functioning and mood disorder. (R. at 18). The ALJ held that Hurt's

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge.

impairments left her with the residual functional capacity ("RFC") to work at all exertional levels but would be limited to unskilled work; work where interpersonal contact is incidental to the work performed; work where the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment; work where the supervision required is simple, direct, and concrete; no contact with the general public; and work that does not require the writing fown of orders or making of change such as cashier or restaurant waitress. (R. at 22). Arnold had no past relevant work. (R. at 27). The ALJ took testimony from a vocational expert ("VE"), who testified that the RFC would allow the performance of such jobs as kitchen helper and laundry worker. (R. at 28). Therefore, the ALJ held that Arnold was not disabled. (R. at 28).

## II. Discussion

Arnold argues that the ALJ erred in rejecting her IQ scores in evaluating her qualification under listing 12.05, assigning an RFC that is beyond her capabilities, failing to develop the record concerning her physical impairments, and failing to specifically include borderline intelligence in his hypothetical question to the VE. Because the ALJ erred in assessing Arnold's IQ under listing 12.05, it is not necessary to reach her other arguments.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g).

The ALJ briefly considered listing 12.05:

> [N]o evidence found the claimant currently has a valid verbal, performance, or full scale I.Q. of 60 through 70 resulting in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence or pace, or repeated episodes of decompensation, each of extended duration.

(R. at 20). According to the ALJ, because Arnold's most recent IQ score was 73, she did not meet listing 12.05.

Arnold argues that the ALJ improperly rejected several IQ scores and relied instead on a single score that was not actually an IQ score. The Commissioner responds that the IQ score the ALJ relied on was above the qualifying score for listing 12.05.

The Commissioner primarily argues that, because Arnold is relying on the "current version" of listing 12.05, rather than the version of the listing in effect at the time of the ALJ's decision, the Court must reject her argument out of hand. While the Commissioner is correct that Arnold's brief quotes the wrong version of listing 12.05, the Court rejects the notion that her argument should be summarily dismissed for that reason, especially since Arnold's argument is equally viable under the requirements of listing 12.05 in effect at the time of the ALJ's decision.

3

Finally, the Commissioner's reliance on *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 634 (8th Cir. 2007) and *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) is misplaced. Unlike in those cases, Arnold's arguments are sufficiently developed for the Court to analyze the record and for the Commissioner to meaningfully respond. The claimants' arguments in *Ahlberg* and *Vandenboom* were entirely conclusory, while Arnold has supported her position with citations to the record and legal arguments explaining why the ALJ erred.

The ALJ ascribed great weight to the IQ score that resulted when Arnold was examined by Tammie Orlicek, M.S., N.C.S.P. (R. at 24). The ALJ noted that the results of a Beta Examination III indicated an IQ equivalent of 73. (R. at 24, 440). This is the score cited by the ALJ in determining that Arnold did not meet listing 12.05. (R. at 20). Of course, this is not the only IQ score in the record, and, even more importantly, it is not the only IQ score equivalent in Ms. Orlicek's examination. In fact, the examination itself notes that the Beta III test evaluates skills in the area of visual-motor development, rather than a full scale IQ. (R. at 440). Other tests administered during the examination yielded IQ equivalents of 74, 69, 77, and 64. (R. at 440). Additionally, while the ALJ used the test results to support a conclusion of "borderline intellectual functioning," Ms. Orlicek stated a range of ability from "well below average to borderline intellectual and academic ability." (R. at 441). Borderline intellectual ability was, in fact, the high end of the range that

Ms. Orlicek found. She further opined that Arnold's abilities were "commensurate with [those that] supported employment, on-the-job training, job placement services or sheltered workshop." (R. at 440). While the ALJ acknowledged Ms. Orlicek's additional statement that Arnold could be "reasonably expected to function vocationally by means of a low demand employment," the overall conclusions she provided appear to be more in line with something less than even unskilled work. (R. at 24, 441).

Compounding these considerations, the record has several other full scale IQ scores for Arnold that are well below 70. In 1998, she was assessed as having a full scale IQ of 64. (R. at 375). In 2000, she tested as having a full scale IQ of 69. (R. at 389). In 2006, she achieved a score of 62 on a Reynolds Intellectual Screening test, which has a mean score of 100 and a standard deviation of 15, placing her in the first percentile. (R. at 400). In 2010, she tested as having a full scale IQ of 67. (R. at 355). In 2012, Arnold tested as having a full scale IQ of 63. (R. at 366). The examination by Ms. Orlicek occurred in 2013 and, as noted previously, included multiple IQ equivalents between 60 and 70.

Based on her full scale IQ scores prior to 2013, and, *properly evaluated* even under Ms. Orlicek's IQ determination, Arnold has a strong argument that she met listing 12.05C, based on a valid full scale IQ between 60 and 70 and an additional

physical or mental impairment imposing an additional and significant work-related limitation of function.[2]

The ALJ, without any explanation or analysis, rejected years of valid IQ scores in favor of a single visual-motor IQ score equivalent and failed to fully evaluate whether Arnold met listing 12.05. The ALJ provided no acceptable reason for rejecting all of Arnold's earlier valid IQ scores that were below 70, and failed to even acknowledge them when discussing the listings. In doing so, the ALJ erred.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The ALJ's decision is therefore REVERSED and

---

[2] The current record also suggests that Arnold may also meet listing 12.05D due to her IQ score and having two marked restrictions of activities of daily living, *i.e.*, marked difficulty in maintaining social function and marked difficulty in maintaining concentration, persistence, or pace. 20 C.F.R., Subpt. P., App. 1 § 12.05. The resolution of the merits of that potential issue must await remand. (R. at 20–21).

REMANDED to the Commissioner with instructions to further develop the record as necessary and to fully reconsider whether Arnold meets listing 12.05 or any other applicable listing.

It is so ordered this 15th day of May, 2018.

_____
UNITED STATES MAGISTRATE JUDGE